**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

OMORO CRUSOE,

        Defendant.

No. 05-CR-71-LRR

**ORDER DENYING
MOTION FOR NEW TRIAL AND
MOTION FOR JUDGMENT OF
ACQUITTAL**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    *A.*    *The Controlled Transactions* . . . . . . . . . . . . . . . . . . . . . . . . . **3**
        *1.*    *March 22, 2004 controlled transaction* . . . . . . . . . . . . . . . **4**
        *2.*    *March 30, 2004 controlled transaction* . . . . . . . . . . . . . . . **6**
    *B.*    *Defendant's Prior Convictions* . . . . . . . . . . . . . . . . . . . . . . . **8**
    *C.*    *Iowa Workforce Development Records* . . . . . . . . . . . . . . . . . . . . . **9**
    *D.*    *Other Evidence Presented at Trial* . . . . . . . . . . . . . . . . . . . . . . . **11**

*IV.*  *MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
    *A.*    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
    *B.*    *Prior Convictions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
        *1.*    *Rule 404(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
            *a.*    *Relevance to material issues* . . . . . . . . . . . . . . . . . . . **13**
            *b.*    *Similarity and remoteness* . . . . . . . . . . . . . . . . . . . **15**
            *c.*    *Sufficiency of evidence* . . . . . . . . . . . . . . . . . . . . . **15**
            *d.*    *Probative value versus prejudicial effect* . . . . . . . . . . **16**
        *2.*    *Rule 403* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
        *3.*    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
    *C.*    *Theory of Defense Instruction* . . . . . . . . . . . . . . . . . . . . . . . . **17**

    **D.**       **Prosecutorial Misconduct** . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

    **E.**       **Newly Discovered Evidence** . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

**V.**    **MOTION FOR JUDGMENT OF ACQUITTAL** . . . . . . . . . . . . . . . . . . **25**

    **A.**       **Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

    **B.**       **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

**VI.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

## I. INTRODUCTION

The matters before the court are Defendant Omoro Crusoe's Motion for New Trial and In Arrest of Judgment ("Motion") (docket no. 47) and Supplemental Motion for New Trial ("Supplemental Motion") (docket no. 61).[1]

## II. PROCEDURAL BACKGROUND

On August 3, 2005, Defendant was charged in a two-count Indictment. Count 1 charged that, on or about March 22, 2004, Defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, after having been previously convicted of two felony drug offenses, to wit: (1) delivery of controlled substances, in the Cook County, Illinois, Circuit Court, on or about May 20, 1996, and (2) possession of controlled substances with the intent to distribute in the Iowa District Court in and for Linn County, on or about October 8, 1999. Such conduct is in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851. Count 2 charged that, on or about March 30, 2004, Defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of heroin, a Schedule I

---

[1] The court will address Defendant's Second Supplemental Motion for New Trial (docket no. 69), filed by Defendant on June 19, 2006, in a separate order.

controlled substance, after having been previously convicted of the same two felony drug offenses. Such conduct is in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851.

On December 15 and 16, 2005, Defendant was tried before a jury. Defendant was personally present and represented by counsel, Mark C. Meyer. Assistant United States Attorney Charles J. Williams represented the government. At the close of the government's case, Defendant made an oral motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motion. At the conclusion of all of the evidence, Defendant orally renewed his motion for judgment of acquittal, and the court again denied the motion. On December 16, 2005, the jury found Defendant guilty of Count 1 and Count 2.

On January 5, 2006, Defendant filed the instant Motion. On January 17, 2006, the government filed a Resistance to Defendant's Motion ("Resistance") (docket no. 48). On January 24, 2006, Defendant filed a Supplemental Authority in Support of Defendant's Motion ("Supplemental Authority") (docket no. 50). On April 27, 2006, Defendant filed a Supplemental Brief in Support of Defendant's Motion ("Supplemental Brief") (docket no. 59). On April 28, 2006, the government filed a Supplemental Resistance to Defendant's Motion ("Supplemental Resistance") (docket no. 60). On May 1, 2006, Defendant filed the instant Supplemental Motion.

On May 1, 2006, the court held a hearing ("Hearing") on Defendant's Motion and Supplemental Motion. Defendant was personally present and represented by Mr. Meyer. Assistant United States Attorney Williams represented the government.

### III. FACTUAL BACKGROUND

#### A. The Controlled Transactions

At trial, Iowa Division of Narcotics Enforcement ("DNE") Special Agent and Drug Enforcement Administration ("DEA") Task Force Officer Greg Brugman ("TFO

Brugman") testified regarding two controlled transactions in which a confidential informant purchased heroin from Defendant. The confidential informant was Charles James Morgan, Jr. ("C.J. Morgan"). C.J. Morgan was paid approximately $280 for his assistance in the controlled transactions. C.J. Morgan testified that, in addition to the incentive of receiving payment for his work, he agreed to help law enforcement officers because he was concerned about his younger brother who was involved with heroin. At the time of the transactions, C.J. Morgan lived at the Larry Nelson Center, a halfway house, where he had been placed as a result of a November 14, 2003, burglary conviction.

### 1. *March 22, 2004 controlled transaction*

The first controlled transaction from Defendant took place on March 22, 2004, at approximately 10:30 a.m. at the Westdale Mall in Cedar Rapids. On March 21, 2004, C.J. Morgan called Defendant and asked to buy one gram of heroin. The two agreed to meet at Westdale Mall, and C.J. Morgan agreed to pay Defendant $250 for the heroin. On March 22, 2004, TFO Brugman picked up C.J. Morgan from the halfway house and the two met with surveillance personnel. The surveillance personnel included DEA Resident Agent in Charge Richard LaMere, Jr., ("RAC LaMere"), DEA Special Agent Kevin Cavanaugh, DEA Special Agent Kyle Brannon, DEA Task Force Officer and DNE Special Agent Joshua Lupkes ("TFO Lupkes"), DEA Task Force Officer and Linn County Sheriff's Office Major William Yount ("TFO Yount"), DEA Task Force Office and Linn County Sheriff's Office Sergeant Mark Strait ("TFO Strait"), and Cedar Rapids Police Department Sergeant Anthony Robinson ("Sergeant Robinson")[2] (hereinafter collectively

---

[2] At the time of the controlled transactions in March of 2004, Sergeant Robinson was a DEA Task Force Officer.

referred to as "Surveillance Officers"). The Surveillance Officers searched C.J. Morgan, equipped him with a listening device and gave him $300 in pre-serialized currency.

TFO Brugman drove C.J. Morgan to Westdale Mall. C.J. Morgan got out of TFO Brugman's car and went to the mall entrance to wait for Defendant. TFO Brugman and RAC LaMere testified that, after a few minutes, Defendant and another black man drove a black Mitsubishi Diamante into the mall parking lot. The Diamante's license plate number was 445 NAB; the Diamante was registered to Kassandra Kuennen at 1801 Park Avenue in Cedar Rapids. Defendant parked the Diamante a few parking places away from TFO Brugman's surveillance vehicle but, because his surveillance vehicle was facing the Diamante, TFO Brugman was able to clearly identify Defendant. Defendant and his passenger exited the Diamante and walked to the mall to meet C.J. Morgan.

RAC LaMere and Sergeant Robinson followed the men into the mall. When the three men stopped to look at cellular telephones, RAC LaMere walked past them so that he could see Defendant's face. Defendant, C.J. Morgan and the other man then went into the restroom where Defendant sold C.J. Morgan one gram of heroin in a small baggie. Sergeant Robinson testified that he lost sight of the three men until he saw them leave the restroom. Once they left the restroom, C.J. Morgan left the mall.

Sergeant Robinson continued surveillance on Defendant and the other man inside the mall. After about thirty minutes, Defendant and the other man returned to the Diamante. TFO Strait and other Surveillance Officers followed them. The Surveillance Officers lost sight of the Diamante when the Surveillance Officers were stopped by a traffic light. TFO Lupkes testified that he saw the Diamante again at approximately 12:35 p.m. The two black men were still inside the Diamante. TFO Lupkes called TFO Strait and followed the Diamante to 344 13th Street in Marion. Defendant and the other man got out of the Diamante and went into the residence, a home converted into apartments.

When C.J. Morgan returned to TFO Brugman's car after the controlled transaction in the restroom, C.J. Morgan gave TFO Brugman one gram of heroin and $50 in change. TFO Brugman presumptively identified the substance as heroin by using a chemical field test kit. C.J. Morgan then prepared a statement detailing the transaction with Defendant.

TFO Brugman sent the substance that had been involved in the March 22, 2004 controlled transaction to the DEA laboratory in Chicago for further chemical analysis. The substance was analyzed by DEA Forensic Chemist Renee Brown. Brown wrote a report regarding her analysis and findings, and the government offered it at trial as Government Exhibit 2. Brown did not testify at trial. Citing and relying on *Crawford v. Washington*, 541 U.S. 36 (2004), and *United States v. Brun*, 413 F.3d 703 (8th Cir. 2005), the court sustained Defendant's objection to the admission of the Government Exhibit 2. *See* Trial Transcript at 377-78.

### 2. *March 30, 2004 controlled transaction*

The second controlled transaction occurred on March 30, 2004, at approximately 9:47 a.m. at Westdale Mall. On March 29, 2004, C.J. Morgan called Defendant and asked to buy two grams of heroin. They agreed to meet at Westdale Mall. After speaking to Defendant, C.J. Morgan called TFO Brugman and told him about the arrangements.

At approximately 8:30 a.m. on March 30, 2004, TFO Lupkes went to 344 13th Street to conduct surveillance and see if Defendant was going to leave from that residence to meet C.J. Morgan at Westdale Mall. About ten minutes after TFO Lupkes arrived at the residence, a black man, a white woman and a child left the residence and got into the same Diamante that Defendant had used in the first controlled transaction. TFO Lupkes tried to follow the Diamante, but he was unsuccessful.

TFO Brugman picked up C.J. Morgan from the halfway house, and the two men met with the Surveillance Officers. TFO Brugman searched C.J. Morgan, equipped him with a listening device and gave him $500 in pre-serialized currency.

When they arrived at Westdale Mall, C.J. Morgan exited TFO Brugman's surveillance vehicle and waited for Defendant at the mall entrance. At approximately 9:45 a.m., a light gray Ford Windstar van pulled up to C.J. Morgan and parked in the fire lane next to the mall. Several Surveillance Officers testified that the gray van was registered to Christine and Kyle Kuennen at 1280 34th Street in Cedar Rapids. The van was driven by a white woman, later identified as Christine Kuennen, and a black man was seated on the passenger's side. RAC LaMere testified that the male in the van was the same man he had seen with C.J. Morgan at the March 22, 2004 controlled transaction. The black man, whom C.J. Morgan identified as Defendant, exited the van and walked into the mall with C.J. Morgan.

After entering the mall, the two men walked around and "talked about the heroin." They then went into a men's restroom. Defendant sold C.J. Morgan two grams of heroin in a small baggie. Defendant told C.J. Morgan that he "needed $550" for the heroin, but C.J. Morgan explained that he only had $500. C.J. Morgan promised to pay Defendant the remaining $50 during a future transaction.

Defendant and C.J. Morgan were in the mall approximately twelve minutes. Defendant returned to the van and the Surveillance Officers watched it leave the parking lot. RAC LaMere followed the van to 1801 Park Avenue, Cedar Rapids, which was the same address that was listed on the Diamante's registration.

After C.J. Morgan left the mall with Defendant, he returned to TFO Brugman's surveillance vehicle and gave TFO Brugman two grams of heroin. TFO Brugman

identified the substance as heroin by using a chemical field test kit. C.J. Morgan prepared a statement detailing the March 30, 2004 controlled transaction.

TFO Brugman returned C.J. Morgan to the halfway house. TFO Brugman then sent the substance that had presumptively tested as heroin to the DEA laboratory in Chicago and requested that it be analyzed further by a chemist. DEA Forensic Chemist Theresa Browning testified that, following the March 30, 2004 controlled transaction, she analyzed a substance provided to her by DEA Task Force Officers. Browning determined that the substance was, in fact, heroin. She wrote a laboratory report regarding her analysis and the report was admitted into evidence.

### B. Defendant's Prior Convictions

TFO Brugman testified about Defendant's two prior drug convictions and the court gave a jury instruction regarding use of the evidence.

| | |
|---|---|
| Government: | Were you able to determine, Special Agent Brugman, that the defendant Omoro Crusoe was convicted of delivery of controlled substances, that being cocaine, in the Cook County, Illinois, Circuit Court on or about May 20 of 1996. |
| TFO Brugman: | Yes, I was. |
| Government: | And were you able to determine that he was likewise convicted of possession of a controlled substance, that being cocaine, with the intent to distribute it in the Iowa District Court for Linn County, on or about October 8 of 1999? |
| TFO Brugman: | Yes. |
| The court: | Can I just break in here and give a short instruction? |

. . . .

8

| The court: | You have just heard a certain category of evidence called "similar acts evidence." Here, that evidence is that the defendant was previously convicted of distributing cocaine and of possessing cocaine with the intent to distribute it. You may not use this similar acts evidence to decide whether the defendant carried out the acts involved in the crime charged in the indictment. . . . Remember, if you find that the defendant may have committed similar acts in the past, this is not evidence that he committed such an act in this case. . . . |
|---|---|

### C. Iowa Workforce Development Records

Defense witness Christine Kuennen testified at trial that Defendant did not have a job in 2004. She testified that she took him to a job interview at a warehouse in Iowa City sometime between March and May of 2004. She drove Defendant to the interview in the same Ford Windstar van that was used during the March 30, 2004 controlled transaction. Another defense witness, Kassandra Kuennen, who is Christine Kuennen's sister-in-law, testified as follows on cross-examination by the government:

| Government: | You indicated that, in your testimony, in 2004 [Defendant] was working from time to time? |
|---|---|
| Kassandra: | Yes. |
| Government: | And you don't know if he was working in March of 2004? |
| Kassandra: | No. |
| Government: | In fact, he wasn't working in March of 2004? |
| Kassandra: | I cannot recall. |

| | |
|---|---|
| Government: | And are you aware that Iowa Workforce keeps records of income earned by wage earners . . . in the State of Iowa? |
| Kassandra: | Yes. |
| Defense counsel: | Excuse me, Your Honor, I think that this is going to call for hearsay. |
| The court: | We'll have to see how it plays out. Overruled at this time. |
| Government: | And during the year of 2004, [Defendant] had no income; isn't that accurate, ma'am? |
| Defense counsel: | Your Honor . . . he's apparently reading from a report that's not been offered in evidence and the maker is not subject to cross-examination. |
| The court: | Overruled.<br>Do you remember the question? |
| Kassandra: | Could you repeat it, please? |
| Government: | Yeah. In 2004 [Defendant] had no income, did he? |
| Kassandra: | I do not recall. |

There were no records from Iowa Workforce Development that were admitted as exhibits during trial. At the Hearing, Defendant admitted evidence from Iowa Workforce Development showing that he was employed in all four quarters of 2004, earning a total of $8,009.24 for the year. The records show Defendant earned $1,862.99 in the first quarter of 2004. The government presented evidence at the Hearing regarding the evidence it relied upon during trial. The government relied on a two-page Iowa Workforce Development document. On the first page, Defendant's name appears in handwriting and

the Social Security number ends in 0242. On the second page, which was stapled to the first, the report shows that a person with a Social Security number ending in 8439 had no reported income in 2004.

### D.  Other Evidence Presented at Trial

The listening device C.J. Morgan wore during both controlled transactions transmitted the conversations he had with Defendant to a device in TFO Yount's possession. TFO Yount listened to the conversations as they took place. Because the mall was so noisy, however, the recordings made by TFO Yount were not introduced as evidence during trial. C.J. Morgan testified that he was not aware of the recording problem.

TFO Brugman testified that it is customary for DEA Task Force Officers to prepare one surveillance report for each controlled transaction even though several Surveillance Officers are involved. RAC LaMere testified that the DEA policy is that "the undercover officer would prepare the purchase report or transaction report, explain the circumstances that he was involved with, and then . . . [another agent is designated] to write a surveillance report."

TFO Strait testified that he volunteered to take notes during both controlled transactions. TFO Strait explained that other Surveillance Officers watched Defendant and C.J. Morgan and then reported to him what they saw. TFO Strait took notes and recorded the information provided by the other Surveillance Officers. This process was used so that the Surveillance Officers could concentrate on watching Defendant and C.J. Morgan instead of being distracted by taking notes.

## IV.  MOTION FOR NEW TRIAL

### A.  Standard of Review

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  Under Rule 33, district courts are granted broad discretion in considering motions for new trial. *United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998).  A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)).  However, "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also Ortega v. United States*, 270 F.3d 540, 547 (8th Cir. 2001) (noting that a district court may grant a new trial under Rule 33 "'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred'" (quoting *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)).

The Eighth Circuit Court of Appeals has noted that district courts enjoy more latitude in granting new trials under Rule 33 than in granting motions for acquittal under Rule 29. *Campos*, 306 F.3d at 579.  However, "[m]otions for new trials based on the weight of the evidence are generally disfavored," and, therefore, district courts should exercise their Rule 33 authority "sparingly and with caution." *Id.*; *see also United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

### B.  Prior Convictions

In support of his Motion, Defendant asserts that the court improperly allowed the government to introduce evidence of his prior convictions.

## 1.     Rule 404(b)

Under Federal Rule of Evidence 404(b), evidence of other crimes or prior acts is admissible if it is:

(1)     relevant to a material issue;

(2)     similar in kind and not overly remote in time to the crime charged;

(3)     supported by sufficient evidence; and

(4)     higher in probative value than in prejudicial effect.

*United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005) (citing *United States v. Green*, 157 F.3d 1111, 1113 (8th Cir. 1998)). Rule 404(b) is a "rule of inclusion" which is designed to exclude evidence which amounts to a mere "observation about a person's character." *United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir. 1988). Defendant alleges that evidence of his 1996 and 1999 drug convictions were not properly admitted pursuant to Federal Rule of Evidence 404(b) and were more prejudicial to the outcome of his case than probative in value. In its Resistance, the government contends that Defendant's prior convictions are relevant to show Defendant's motive, intent, plan and knowledge.

### a.     Relevance to material issues

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In order to prove Defendant guilty of distribution of heroin as charged in Count 1 and Count 2, the government had to prove (1) Defendant intentionally transferred heroin to another person and (2) at the time of the transfer, Defendant knew that the substance was heroin. (Final

Jury Instruction no. 13). Defendant's prior drug convictions are relevant to two material issues, namely Defendant's intent to transfer the heroin and Defendant's knowledge that the substance he was transferring was, in fact, heroin. *See United States v. Foster*, 344 F.3d 799, 801-01 (8th Cir. 2003) (determining that defendant's prior conviction for selling crack cocaine was relevant to his knowledge or intent to commit the possession with intent to distribute crack cocaine count with which he was charged).

In his Supplemental Brief, Defendant alleges that "neither intent nor mistake was the basis for the defense to the charges" against him. Instead, Defendant asserts that he based his defense on the allegation that C.J. Morgan was unreliable and the investigation of Defendant by the Surveillance Officers was not thorough. Although Defendant contends that the assertion of these defenses removes the relevancy of his prior convictions, the court finds that Defendant's argument fails because this is not a situation where Defendant totally eliminated a defense based upon his mental state. In *United States v. Jenkins*, 974 F.2d 953 (8th Cir. 1992), the Eighth Circuit Court of Appeals rejected the defendant's argument that "evidence of the prior crime was inadmissible because he asserted a general denial defense and therefore motive and intent were not material issues in his case." *Jenkins*, 974 F.2d at 960. The Eighth Circuit Court of Appeals stated that "[b]y pleading not guilty, the defendant put the government to its proof on all elements of the charged crime, including intent [and] knowledge . . . . The government is not required to wait until a defendant posits a particular defense asserting the lack of one of the elements of the charged crime, but may prove up their case in anticipation of such a defense." *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)). Defendant presented a general denial defense, albeit with an emphasis on the insufficiency of the evidence, which included a contest to each element of each offense. Therefore, the court finds that Defendant's prior convictions were relevant.

### b.    *Similarity and remoteness*

Defendant's prior convictions for distribution of cocaine and possession with intent to distribute cocaine are similar in kind to Defendant's instant heroin distribution convictions. Although Defendant's prior convictions involved cocaine, they are still similar to the instant counts of conviction. *See United States v. Johnson*, 977 F.2d 457, 458 (8th Cir. 1992) (holding that defendant's earlier convictions for possession of marijuana with intent to distribute were admissible in prosecution for distribution of cocaine).

Additionally, Defendant's prior convictions are not too remote in time. In *Strong*, the Eighth Circuit Court of Appeals noted that, when evaluating remoteness, there is no absolute rule regarding the maximum number of years between a prior offense and an offense that is the subject of a current trial. *Strong*, 415 F.3d at 905. The 1996 and 1999 convictions occurred eight years and five years before the offense that is the subject of the Indictment, respectively. In *United States v. McCarthy*, 97 F.3d 1562 (8th Cir. 1996), the Eighth Circuit Court of Appeals upheld the introduction of evidence of other crimes that "occurred 13 years prior to the conduct challenged." *McCarthy*, 97 F.3d at 1563. The Eighth Circuit Court of Appeals noted, however, that this thirteen-year mark is not a bright line rule. *Strong*, 415 F.3d at 905-06 (citing *McCarthy*, 97 F.3d at 1573). Eight years separates Defendant's oldest prior conviction and the instant offense, and such span is not too remote in time to be relevant. *See id*.

### c.    *Sufficiency of evidence*

The government provided sufficient evidence of Defendant's prior convictions. During trial, TFO Brugman testified that, as part of his investigation, he conducted an investigation into Defendant's criminal history. He explained that he obtained certified copies of Defendant's 1996 and 1999 drug convictions. Pursuant to Defendant's pre-trial

request, the government did not offer into evidence the certified copies of Defendant's prior convictions. TFO Brugman's testimony was sufficient evidence of Defendant's 1996 and 1999 convictions.

### d. *Probative value versus prejudicial effect*

Finally, the use of Defendant's prior convictions was more probative in value than prejudicial to Defendant's case. As previously noted, evidence of Defendant's prior convictions is probative to show Defendant's intent to distribute a controlled substance and knowledge that the substance he was distributing was heroin, a controlled substance. Following TFO Brugman's testimony regarding Defendant's prior convictions, the court informed the jury that evidence of the convictions may not be used "to decide whether the defendant carried out the acts involved in the crime charged in the [I]ndictment." Any prejudicial effect on Defendant's case, therefore was lessened by the court's limiting instruction to the jury. *See Strong*, 415 F.3d at 906 (a limiting instruction following the admission of other acts evidence lessens the danger of unfair prejudice to the defendant) (citing *United States v. Franklin*, 250 F.3d 650, 659 (8th Cir. 2001)). Accordingly, the probative value of admitting TFO Brugman's testimony regarding Defendant's prior convictions was greater than any prejudicial effect on Defendant's case.

### 2. *Rule 403*

Defendant asserts that, even if his prior convictions were properly admitted pursuant to Rule 404(b), the convictions should have been excluded pursuant to Federal Rule of Evidence 403. Defendant asserts that the convictions had no probative value as Defendant's knowledge and intent were not at issue and were highly prejudicial.

Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

> prejudice, confusion of the issues, or misleading the jury, or
> by considerations of undue delay, waste of tie, or needless
> presentation of cumulative evidence.

Fed. R. Evid. 403. As previously explained, evidence of Defendant's 1996 and 1999 cocaine distribution convictions was relevant to show Defendant's intent and knowledge, which are elements in Count 1 and Count 2. Furthermore, any prejudicial effect to Defendant's case was lessened by the limiting instruction provided to the jury immediately following TFO Brugman's testimony and in the final jury instructions. *See Strong*, 415 F.3d at 906. The court finds that the prejudicial effect of the evidence of Defendant's prior convictions did not substantially outweigh its probative value.

### 3. Conclusion

Defendant's prior convictions were properly admitted pursuant to Rule 404(b) and Rule 403. Accordingly, a new trial is not warranted on this ground.

## C. Theory of Defense Instruction

Defendant asserts that the court improperly failed to instruct the jury that incomplete investigation on behalf of the government supports the inference of reasonable doubt. Defendant contends that, because the Surveillance Officers involved in the controlled transactions only prepared two written reports of their observations, "later recollections [by the Surveillance Officers] . . . are naturally prone to mistake and subject to skepticism." In its Resistance, the government argues that Defendant's requested instruction is not a correct statement of law and not supported by the evidence presented during trial.

Defendant mistakenly relies on *White v. Illinois*, 502 U.S. 346 (1992), in support of the following requested jury instruction: "[I]nadequate or incomplete investigation by the prosecution or the police may support an inference adverse to the prosecution which

may be sufficient to leave [the jury] with a reasonable doubt as to the defendant's guilt." This requested instruction is not a correct statement of law. In *White*, the concurring justices noted that "[r]eliability is more properly a due process concern." *White*, 502 U.S. at 363-64 (Thomas, J., and Scalia, J., concurring). In this notation, the concurrence referred to the admission of hearsay evidence in light of the Confrontation Clause and was not evaluating the sufficiency of a police investigation. *Id.* Accordingly, Defendant's reliance on *White* to support his requested jury instruction regarding the sufficiency of the investigation is misguided. Furthermore, the court instructed the jury that the government had the burden of proving Defendant's guilt beyond a reasonable doubt. (Final Jury Instruction no. 12).

Additionally, as the government notes in its Resistance, Defendant's requested instruction is not supported by the evidence. During the trial, TFO Brugman testified that it is customary for the DEA Task Force to prepare one surveillance report for each controlled transaction even though several agents are involved in the surveillance. TFO Strait explained that this process was used so that the Surveillance Officers could concentrate on watching Defendant and C.J. Morgan and not be distracted by taking notes. RAC LaMere testified that, when an agent is undercover, it is DEA policy for the undercover officer to prepare one report and a surveillance officer to prepare a separate report. Here, several of the Surveillance Officers testified and were subject to cross-examination. The jury was able to evaluate the testimony of the Surveillance Officers involved in the controlled transactions and compare their testimony to the information in the written reports. The court instructed the jury that they were "the sole judges of the weight and credibility of the testimony and the value to be given to each witness" and should evaluate the reasonableness of a witness's testimony and whether "the testimony

is consistent with any evidence" that they believed to be true. (Final Jury Instruction no. 6). Accordingly, Defendant's request for a new trial on this basis is denied.

### D. Prosecutorial Misconduct

In support of his Motion, Defendant asserts that, during trial, the prosecutor improperly asked a witness whether Defendant had any income during 2004 and, during closing argument, improperly stated that Defendant was unemployed during 2004 and earned money by selling heroin. Defendant notes that a post-trial review of the Iowa Workforce Development records indicated that Defendant did, in fact, have income during 2004. Defendant alleges that this question prejudiced his case because it allowed the jury to assume that Defendant's only source of income during 2004 was from the sale of illegal narcotics.

In its Resistance, the government acknowledges that the prosecutor's question to Kassandra Kuennen regarding the records was based on incorrect Iowa Workforce Development records which were relied upon due to a clerical error. The government, however, notes that the prosecutor had a good-faith basis for asking the question and that the error was harmless based on the weight of the evidence against Defendant.

The Eighth Circuit Court of Appeals has established a two-prong test for determining whether conduct by a prosecutor constitutes reversible prosecutorial misconduct: (1) the prosecutor's conduct must have been, in fact, improper and (2) the conduct must have prejudicially affected the defendant. *United States v. Plumley*, 207 F.3d 1086, 1094 (8th Cir. 2000); *United States v. Benitez-Meraz*, 161 F.3d 1163, 1166 (8th Cir. 1998). Additionally, when evaluating the prejudicial effect of such misconduct, the court should consider the following: (1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence; and (3) the curative actions taken by the trial court. *Id.*

During cross-examination, the prosecutor asked Kassandra Kuennen about Defendant's employment history in 2004:

| | |
|---|---|
| Government: | You indicated that, in your testimony, in 2004 [Defendant] was working from time to time? |
| Kassandra: | Yes. |
| Government: | And you don't know if he was working in March of 2004? |
| Kassandra: | No. |
| Government: | In fact, he wasn't working in March of 2004? |
| Kassandra: | I cannot recall. |
| Government: | And are you aware that Iowa Workforce keeps records of income earned by wage earners in the . . . State of Iowa? |
| Kassandra: | Yes. |
| Defense counsel: | Excuse me, Your Honor, I think that this is going to call for hearsay. |
| The court: | We'll have to see how it plays out. Overruled at this time. |
| Government: | And during the year of 2004, [Defendant] had no income; isn't that accurate, ma'am? |
| Defense counsel: | Your Honor . . . he's apparently reading from a report that's not been offered in evidence and the maker is not subject to cross-examination. |
| The court: | Overruled.<br>Do you remember the question? |

| Kassandra: | Could you repeat it, please? |
|---|---|
| Government: | Yeah. In 2004 [Defendant] had no income, did he? |
| Kassandra: | I do not recall. |

The government's cross-examination of Kassandra was based on the prosecutor's mistaken belief that the Iowa Workforce Development records indicated that Defendant was not employed during 2004. This information was clearly not correct. *Compare* docket no. 48-2 (showing that a person with Social Security number ending in 8439 had no reported income in 2004), *with* docket no. 47-4 (showing Defendant's Social Security number ending in 0242 and an earned income of $1,862.99 in the first quarter of 2004 and $8,009.24 total in 2004). Although the prosecutor may have, in good faith, relied on the Iowa Workforce Development records he believed to be Defendant's records, such records actually detailed another witness's employment history rather than Defendant's employment history. Accordingly, the prosecutor based this portion of his cross-examination of Kassandra on mistaken facts. *Plumley*, 207 F.3d at 1094.

Even if the government's questions during cross-examination were improper, Defendant's case was not prejudiced. *Id.* During direct examination by Mr. Meyer, Kassandra testified that Defendant worked "nights at CCB Packaging" in 2004 but that Defendant had periods of unemployment during the year, including the month of March of 2004. Christine Kuennen, Kassandra's sister-in-law, testified that Defendant was not working in 2004 and that she took Defendant to a job interview in Iowa City, further indicating that Defendant was not employed during this time period. This does not conflict with the testimony provided by Kassandra in response to the questions posed by the prosecutor during cross-examination. Moreover, Kassandra responded to the prosecutor's questioning with a conclusion that she did not know what information was contained in the

Iowa Workforce Development records. The records were not admitted into evidence. Accordingly, any questions based on the incorrect Iowa Workforce Development records do not warrant a new trial. *See Plumley*, 207 F.3d at 1094.

During closing arguments, the government referred to Christine and Kassandra's testimony. The government reminded the jury that Christine testified that Defendant was not working during 2004 and Kassandra testified that she could not recall whether Defendant was working during 2004. The government then requested the jury to infer from that information that Defendant had the time to sell heroin and the need to earn money. The government's closing argument was not based on the Iowa Workforce Development records but on the testimony of two of Defendant's witnesses. Accordingly, Defendant's request for a new trial on the basis of prosecutorial misconduct is denied.

### E. Newly Discovered Evidence

In his Supplemental Motion, Defendant asserts that newly discovered evidence indicates that C.J. Morgan lied about material matters while testifying during trial and TFO Brugman misled the jury regarding an ongoing investigation of C.J. Morgan's brother, Levi Morgan. Defendant contends that he should be granted a new trial based on this newly discovered evidence. During the Hearing, the government explained that the newly discovered evidence does not contradict C.J. Morgan's testimony and, therefore, no new trial is warranted.

"Motions for New Trial based on newly discovered evidence are disfavored." *United States v. Dogskin*, 265 F.3d 682, 685 (8th Cir. 2001). To succeed in his request for a new trial based on a claim of newly discovered evidence, Defendant must prove the following factors:

> (1) the evidence must have been discovered after trial; (2) the
> failure to discover must not be attributable to a lack of due

diligence on the part of the movant; (3) the evidence must not
be merely cumulative or impeaching; (4) the evidence must be
material; and (5) the evidence must be likely to produce an
acquittal if a new trial is granted.

*United States v. Duke*, 255 F.3d 656, 659 (8th Cir. 2001) (citing *United States v. Ryan*,
153 F.3d 708, 713 (8th Cir. 1998)).

The newly discovered evidence that Defendant asserts was not available to him prior
to trial and would have affected the outcome of his case includes: (1) an article from the
*Cedar Rapids Gazette* on April 4, 2006 ("Exhibit A") and (2) a March 3, 2006 statement
by Matthew Fountain ("Exhibit B"). Exhibit A indicates that Levi Morgan had been
charged with the distribution of heroin that caused the death of one person and "nearly
caus[ed] the death of another." Exhibit B shows Fountain's assertion that he met Levi
Morgan through C.J. Morgan and knew that Levi Morgan "sold and used heroin."
Fountain further explained in Exhibit B that C.J. Morgan was the person who was
"responsible for getting Levi Morgan hooked on heroin."

During trial, C.J. Morgan testified to the following:

Government:        And you say that [your brother] also is a heroin user?

C.J. Morgan:       Yes, sir.

Government:        And he was a heroin user in March of 2004?

C.J. Morgan:       Yes, sir.

Government:        And does he sell heroin?

C.J. Morgan:       No, sir.

Government:        Where does he get his heroin?

23

| C.J. Morgan: | I don't know now. |
| Government: | Where was he getting it at the time? |
| C.J. Morgan: | I know he got it from [Defendant] a couple of times. |
| Government: | Did he ever get heroin from you? |
| C.J. Morgan: | No, sir. I got high with him. |

C.J. Morgan also testified that he volunteered to be a confidential informant for the government against Defendant because he was concerned about his younger brother who was involved with heroin. TFO Brugman testified that TFO Brugman had not investigated Levi Morgan.

Defendant asserts that because the newly discovered evidence contradicts the trial testimony of C.J. Morgan and TFO Brugman, it could have been used to impeach both witnesses. Exhibits A and B are not inconsistent with the trial testimony of C.J. Morgan and TFO Brugman during trial and, therefore, are merely cumulative evidence. *See Duke*, 255 F.3d at 659. Exhibit A informs the public that Levi Morgan, referred to as L.M. in the article,[3] had been charged with the distribution of heroin, causing the death of one person and the serious bodily injury of another. Exhibit A does not provide any new evidence in Defendant's case or contradict the testimony of C.J. Morgan.

---

[3] Levi Morgan was referred to as "L.M." because he was initially charged as a juvenile. *See* 18 U.S.C. § 5038 ("Unless a juvenile who is taken into custody is prosecuted as an adult neither the name nor picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding."). *See generally United States v. L.M.*, 425 F. Supp. 2d 948 (N.D. Iowa 2006). The undersigned presided over the juvenile proceedings and ultimately transferred Levi Morgan to adult status. *See generally United States v. L.M.*, 427 F. Supp. 2d 867 (N.D. Iowa 2006).

Exhibit B indicates that C.J. Morgan was responsible for Levi Morgan's involvement with heroin. Contrary to Defendant's assertion, this does not necessarily contradict C.J. Morgan's testimony that Levi Morgan bought his heroin from a source other than C.J. Morgan. During Defendant's trial, C.J. Morgan testified that he "got high" with his brother. Although Exhibit B indicates that someone purchased heroin from Levi Morgan, there is nothing in Exhibit B which indicates that, at the time of trial, C.J. Morgan was aware that his brother was selling heroin.

Defendant asserts that the newly discovered evidence indicates that, contrary to TFO Brugman's trial testimony, Levi Morgan was under investigation. When questioned by Defendant during trial, TFO Brugman testified that he was not investigating Levi Morgan. Accordingly, even if Levi Morgan was, in fact, under investigation for the distribution of heroin, TFO Brugman was not involved in that investigation, and neither Exhibit A nor Exhibit B contradicts that testimony.

Defendant is not entitled to a new trial based on this newly discovered evidence because he has not shown that the evidence would have been used for more than an attempted impeachment of C.J. Morgan and TFO Brugman. Defendant has also failed to prove that this cumulative evidence would have had any affect on the outcome of his case. Because he cannot meet the five factors for a new trial, Defendant's Motion shall be denied on this ground. *Duke*, 255 F.3d at 659.

## V. *MOTION FOR JUDGMENT OF ACQUITTAL*

### A. *Standard of Review*

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It

is well settled, however, that "[j]ury verdicts are not lightly overturned." *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999). The court must uphold the jury's verdict so long as "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *Id.* Those tasks are for the jury. *Id.*

### B. Analysis

In his Motion, Defendant contends that the evidence was insufficient to support his conviction under Count 1 of the Indictment.[4] More specifically, Defendant asserts that there was insufficient evidence to prove that the substance in Count 1 was, in fact, heroin. Accordingly, Defendant asserts that his request for judgment of acquittal regarding Count 1 should be granted.

Even though the chemical report identifying the substance from the March 22, 2004, controlled transaction as heroin was not admissible during trial, "[t]he identity of a substance may be established by indirect circumstantial evidence beyond a reasonable doubt." *United States v. Meeks*, 857 F.2d 1201, 1204 (8th Cir. 1988). The admission of circumstantial evidence to identify a controlled substance is within the discretion of the trial court and may include such testimony as "opinion testimony from a witness who couples past use with present experience with the substance in question," *United States v.*

---

[4] In the headings of Defendant's Motion and brief, he argues that the evidence was insufficient to support a conviction on Count 2. Upon reading and listening to his arguments that the DEA laboratory report was not admitted into evidence, it became apparent to the court that Defendant intended to seek judgment of acquittal on Count 1.

*Westbrook*, 896 F.2d 330, 336 (8th Cir. 1990), and opinion testimony from "an experienced narcotics detective," *United States v. Williams*, 982 F.2d 1209, 1212 (8th Cir. 1992).

During trial, TFO Brugman testified that, when C.J. Morgan gave him the substance that had been purchased from Defendant on March 22, 2004, TFO Brugman field tested it. TFO Brugman explained that "a field test is a chemical test kit that can be purchased for law enforcement" to presumptively identify a controlled substance. The field test indicated that the substance was heroin. Moreover, TFO Brugman testified about the street price of heroin, and such prices were consistent with the price C.J. Morgan paid Defendant for the substance he purchased during the controlled transaction.

C.J. Morgan testified that he was a former heroin user. Accordingly, he was qualified to identify the substance sold to him by Defendant as heroin. The trial evidence showed that, prior to each controlled transaction, C.J. Morgan had spoken with Defendant and pre-arranged to buy heroin from him. Also, C.J. Morgan spoke with Defendant about heroin during the controlled transactions. *See, e.g.*, Trial Transcript at 144 (C.J. Morgan discusses the second controlled transaction and explains that he and Defendant "walked around the mall for a while and talked about the heroin and went into a different bathroom on the other side of the mall."). These conversations are circumstantial evidence supporting a jury's finding that the substance involved in the March 22, 2004 controlled transaction was heroin.

There was sufficient evidence to support the jury's determination that the substance sold to C.J. Morgan by Defendant on March 22, 2004, was, in fact, heroin. Defendant's request for judgment of acquittal on Count 1, therefore, shall be denied.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED:**

(1)     The court hereby **DENIES** Defendant Omoro Crusoe's Motion for New Trial and In Arrest of Judgment (docket no. 47); and

(2)     The court hereby **DENIES** Defendant Omoro Crusoe's Supplemental Motion for New Trial (docket no. 61).

**IT IS SO ORDERED.**

**DATED** this 23rd day of June, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA